1  Frank P. Sarro (State Bar No. 129780)
   225 Bush Street, 16th Floor
2  San Francisco, CA 94104
   Telephone: (415) 439-8877
3  Facsimile: (415) 439-8833

4  Attorney for Plaintiff
   LAWRENCE C. LAUSER

5

6

7

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11 LAWRENCE C. LAUSER,                  )  **CASE NO. CV 07 6464 SC**

12         Plaintiff,                   )  PLAINTIFF'S MEMORANDUM OF
                                        )
13                                      )  POINTS AND AUTHORITIES OPPOSING
           v.                           )
14                                      )  DEFENDANT CCSF'S 12(b)(6) MOTION
   CITY COLLEGE OF SAN FRANCISCO,       )
15 SAN FRANCISCO BUILDING AND           )  TO DISMISS
   CONSTRUCTION TRADE COUNCIL           )
16 UNIONS, and UNITED BROTHERHOOD       )  Date:        April 4, 2008
   OF CARPENTERS AND JOINERS OF         )
17 AMERICA LOCAL UNION NO. 22,          )  Time:        10:00 a.m.
                                        )
18         Defendants.                  )  Courtroom:   1 (17th Floor)
   _____  )

19

20

21                        I.  INTRODUCTION

22        Not all schools are held to be political subdivisions of the State.  Deciding

23 whether a particular school is a political subdivision of the State requires factual

24 determinations that include how independent the school is from the State, how much

25 money the State gives the school, and how much influence the State has over the

26 school's operation.  This is not something that can be decided as a matter of law on a

27 motion to dismiss because it is so fact specific.  Here, plaintiff has learned that

28 defendant City College of San Francisco ("CCSF") has issued approximately

   Plaintiff's MPA Oppos'g 12(b)(6) Dismissal                        -1-

1   $700,000,000 (seven hundred <u>million</u> dollars) of bonds to fund itself over the last few
2   years, while the State of California has only contributed a fraction of CCSF's budget in
3   that time.  In <u>Mt. Healthy City School District Board of Education v. Doyle</u>, 429 U.S.
4   274, 280-281, 97 S.Ct. 568, 572-573, 50 L.Ed.2d 471, the United States Supreme
5   Court held that a school board was <u>not</u> a political subdivision of the State and not
6   entitled to 11th Amendment immunity when it had the power to issue bonds (even while
7   subject to guidance from the State Board of Education and receiving a significant
8   amount of money from the State).

9       Accordingly, this Court should allow plaintiff to pursue discovery to determine
10  the relative powers of CCSF and the exact nature of the relationship between the State
11  of California and CCSF before the Court grants what is, in essence, a motion for
12  summary judgment dismissing this case.

13                              II.  <u>ARGUMENT</u>

14      Every school is different and the facts surrounding each school and its
15  relationship to the State must be carefully analyzed.  For example, in <u>Stoddard v.</u>
16  <u>School Dist. No. 1, Lincoln County, Wyoming</u>, 429 F. Supp. 890, 893-894 (D.C. Wyo.
17  1977), aff'd in part, rev'd in part on other grounds, 590 F.2d 829 (9th Cir. 1979), a
18  school district was held to be more like a municipal corporation than an arm of the
19  state.  Even though it received more than a quarter of its funds from the state,
20  significant factors were whether it procured liability insurance, held and conveyed real
21  property, and had the power to discharge employees.  <u>Id</u>.  <u>See also</u> <u>Mt. Healthy City</u>
22  <u>School District Board of Education v. Doyle</u>, 429 U.S. 274, 280-281, 97 S.Ct. 568, 572-
23  573, 50 L.Ed.2d 471 (school board more like a county or city than an arm of the State;
24  even though subject to guidance from the State Board of Education and receiving a
25  significant amount of money from the State, the school board had the power to issue
26  bonds and levy taxes).  Plaintiff must be allowed to conduct discovery to ascertain the
27  true nature of CCSF and its relationship to the State of California.  After all, CCSF is a
28  <u>city</u> college of the City of San Francisco.  It is not a State University or a State College

Plaintiff's MPA Oppos'g 12(b)(6) Dismissal                                    -2-

1  of California.  It would be premature to dismiss plaintiff's complaint at this stage of the
2  proceedings.

3         As a preliminary matter, plaintiff opposes defendant CCSF's request for judicial
4  notice and moves to strike any extrinsic evidence attached to CCSF's motion to
5  dismiss.  The documents that CCSF has appended to its 12(b)(6) motion to dismiss are
6  not properly authenticated.  In addition, extraneous material is more appropriate for a
7  motion for summary judgment under FRCP 56 than a motion to dismiss under FRCP
8  12(b)(6).  If the Court is inclined to consider extraneous evidence in ruling on a 12(b)(6)
9  motion, plaintiff must be given the opportunity to conduct discovery concerning City
10 College's legal status and the hearing on the motion to dismiss should be vacated.

11        CCSF neglects to tell this Court that binding Ninth Circuit precedent holds that
12 plaintiff Lauser may maintain this action against his employer and unions regardless of
13 whether the parties fit the precise definition of "employee," "employer" or "union."
14 Alvares v. Erickson, 514 F.2d 156 (9th Cir. 1975) held that members of a local labor
15 union could sue trustees of a statewide trust for uncommitted reserves attributable to
16 prior contributions made by employers on behalf of the local's members.  What matters
17 for jurisdictional purposes is whether the lawsuit concerns alleged violations of a
18 "contract" or collective bargaining agreement, not whether the parties are employees,
19 employers or unions.  The Ninth Circuit stated, id. at 162 (emphasis added):

20        As the Supreme Court held in Smith v. Evening News Association, 1962,
21        371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246, section 301 refers to
22        "contracts" between an employer and a labor organization – not to "suits"
23        between them.  In Smith the Court held that without joining the union as a
24        party plaintiff, individual employees can sue under section 301 to enforce
25        rights arising from a labor contract.

26        We do not accept the State Trustees' argument that Smith
27        nonetheless implies that either a union or an employer must be a party to
28        the action if section 301 is to be invoked.  We think that such a

1    <u>requirement would be inconsistent with the Court's instruction in Smith</u>

2    <u>that section 301(a) is not to be given a narrow reading</u>.

3

4    _____This holding was followed and reinforced one year later by the Ninth Circuit.

5    <u>Rehmar v. Smith</u>, 555 F.2d 1362 (9th Cir. 1976) held that the federal district court had

6    jurisdiction under section 301 of the Labor Management Relations Act when a union

7    member's widow brought an action against two pension fund trustees to recover

8    survivor's benefits allegedly due her under a collectively bargained pension plan, even

9    though the widow was not an "employee" and the trustees were not "employers."

10   Again, the crucial consideration is whether the lawsuit concerns alleged violations of a

11   "contract" or collective bargaining agreement.  As the Court stated, <u>id</u>. at 1366

12   (emphasis added):

13         Section 301 jurisdiction is not dependent upon the parties to the suit but

14         rather the nature or subject matter of the action.  <u>Jurisdiction exists as</u>

15         <u>long as the suit is for violation of a contract between a union and</u>

16         <u>employer even if neither party is a union or an employer</u>.  <u>Alvares v.</u>

17         <u>Erickson</u>, 514 F.2d 156, 162-64 (9th Cir.), <u>cert. denied</u>, 423 U.S. 874, 96

18         S.Ct. 143. 46 L.Ed.2d 106 (1975); <u>see</u> <u>Smith v. Evening News</u>

19         <u>Association</u>, 371 U.S. 195, 200-01, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962).

20         Because of CCSF's inappropriate inclusion of extrinsic evidence in its 12(b)(6)

21   motion to dismiss, there is no proper evidence before this Court that the parties are

22   anything but an employee, an employer and two unions.  Again, if the Court is inclined

23   to consider this evidence anyway, plaintiff should be given the chance to conduct

24   discovery on the precise legal status of CCSF.

25         Plaintiff's research found that <u>Ayres v. IBEW</u>, 666 F.2d 441 (1982) dismissed a

26   lawsuit on the grounds that the defendant employer was a political subdivision of a

27   State.  But in that case, "The parties agreed that the District [employer] is a political

28   subdivision," <u>id</u>. at 442.  There is <u>no</u> agreement here by plaintiff that City College of

Plaintiff's MPA Oppos'g 12(b)(6) Dismissal                                        -4-

1  San Francisco is a political subdivision of the State of California.

2      Indeed, as discussed above, schools are often held not to be political

3  subdivisions of the State. Stoddard v. School Dist. No. 1, Lincoln County, Wyoming,

4  429 F. Supp. 890, 893-894 (D.C. Wyo. 1977), aff'd in part, rev'd in part on other

5  grounds, 590 F.2d 829 (9th Cir. 1979). See also Mt. Healthy City School District Board

6  of Education v. Doyle, 429 U.S. 274, 280-281, 97 S.Ct. 568, 572-573, 50 L.Ed.2d 471

7  (school board more like a county or city than an arm of the State and not entitled to 11th

8  Amendment immunity; even though subject to guidance from the State Board of

9  Education and receiving a significant amount of money from the State, the school board

10 had the power to issue bonds and levy taxes).   CCSF's motion to dismiss should be

11 denied because there is insufficient evidence showing the precise nature of City

12 College of San Francisco, including its powers and duties, and its relationship to the

13 State of California.

14      The very case cited by CCSF shows that it is premature at this point to dismiss

15 plaintiff's complaint. Mitchell v. Los Angeles Community College Dist., 861 F.2d 198,

16 201 (9th Cir. 1988) teaches that the following factors must be examined to determine

17 whether a defendant is an arm of the state: (1) whether a money judgment would be

18 satisfied out of state funds, (2) whether the entity performs central governmental

19 functions, (3) whether the entity may sue or be sued, (4) whether the entity has the

20 power to take property in its own name or only the name of the state, and (5) the

21 corporate status of the entity.  At this stage of the proceedings, there is little or no

22 evidence whatsoever concerning all five of these factors.  Nevertheless, plaintiff has

23 learned that CCSF's statement, on page 3, line 19, of its opening brief – that CCSF

24 "receive[s] complete funding from the state" – is not accurate.  To the contrary, CCSF

25 has issued approximately $700 million in bonds over the last several years.  In addition,

26 CCSF operates its own businesses and derives income from paid sporting and

27 theatrical events, lease of CCSF's new sports facility to Lick Wilmerding School, paid

28 parking facilities, lease of public building space to vendors at the Main and Downtown

Plaintiff's MPA Oppos'g 12(b)(6) Dismissal                          -5-

Campuses, multiple retail book stores, cafeterias and specialty restaurants – all of which the State of California does not fund.  In addition, CCSF owns property in its own name at 33 Gough Street in San Francisco and at the San Francisco Airport.  Even without the opportunity to conduct formal discovery, what plaintiff has learned so far indicates that the five <u>Mitchell</u> factors weigh heavily in favor of finding that CCSF is not a dependent instrumentality of the State of California.  <u>Cerrato v. San Francisco Community College District</u>, 26 F.3d 968, 972 (9th Cir. 1994) is not to the contrary because there the court never analyzed the five <u>Mitchell</u> factors and assumed that all community colleges in California are the same.  What plaintiff has been able to find out so far is that CCSF runs its own businesses and funds most of its own programs so that it resembles a business corporation more than anything else.  It is certainly run differently from the Los Angeles Community College District in the <u>Mitchell</u> case.

Finally, If it is not clear from plaintiff's original Complaint that he has complied with all administrative requirements and exhausted all administrative remedies, he should be granted leave to amend to do so.

III.  <u>CONCLUSION</u>

For all the above reasons, CCSF's motion to dismiss should be denied.

Dated: March 21, 2008                          Respectfully submitted,

                                               FRANK P. SARRO


                                               _____
                                               Attorney for Plaintiff
                                               LAWRENCE C. LAUSER

PROOF OF SERVICE

       I am over the age of 18 and not a party to this action.  My business address is 225 Bush St., 16th Floor, San Francisco, California 94104.

       On the date below, I served the foregoing document on the parties in this action by enclosing a true copy in a sealed envelope with postage prepaid and depositing the envelope into the United States Mail at San Francisco, California, addressed to:

Stewart Weinberg
Weinberg, Roger & Rosenfeld
1001 Marina Village Parkway, Suite 200
Alameda, CA 94501-1091

Randy Riddle
Renne Sloan Holtzman & Sakai
350 Sansome St., Suite 300
San Francisco, CA 94104

       I declare under penalty or perjury under the laws of the State of California that the foregoing is true and correct.  Executed on March 21, 2008, at San Francisco, California.

_____
Frank P. Sarro

Plaintiff's MPA Oppos'g 12(b)(6) Dismissal                                                    -7-